Thank you, Your Honor. Good morning, may it please the court. I'm Nick Farnolo, representing the appellant Napoli Byrne Ripke Shkolnik here this morning. We're asking the court for two things here today. The first is to reverse the district court on its findings of alleged misconduct, which are inappropriate in the summary fee proceeding, and that's all this was below, a fee petition. It is inappropriate in that type of proceeding to make those kinds of findings. There is clear, well-settled case law in both Minnesota and the District Court of Minnesota that shows such a finding is inappropriate. Those cases are cited throughout my brief and my reply brief, but I will cite them for the court here. Thomas A. Foster v. Paulson, that is the District of Minnesota 2005, Cummins Law Office v. Norman Graphics, that's the District of Minnesota 2011, and J.W. v. St. Paul Public School, District of Minnesota 2013, all three hold that in a context of a summary proceeding, the court who is ruling on the summary proceeding should not make that proceeding into a mini malpractice trial or attorney misconduct proceeding. That is better held in another forum, and sure enough, there is a malpractice case currently going, which is if there is an appropriate forum to make these kinds of findings, that is the appropriate place. The reasoning behind those decisions is simple. A misconduct or malpractice allegation is a layered question, a detailed question that requires context, that requires a record of evidence behind it. It cannot be determined in the context of an opening brief, an opposition brief, and a reply brief, and then some attached exhibits, and that's what the court below did. What if that issue, though, is material to deciding the issue the District Court has to decide? It's not. What is it supposed to do? I understand that question, Your Honor, but it's not. And not only that, those misconduct findings are not supported by the factual record. Why is it not material? It has nothing to do with it. Say it were conceded. What's that? Say it were conceded. Wouldn't that be relevant? Yes, but we did not concede that here. All right, but you've just defeated your argument that it's not material. You're just now saying there wasn't enough proof. Well, there's no facts in the record, and the case law is crystal clear on this. It is inappropriate to make those types of determinations in this summary proceeding. Well, then how is the judge supposed to decide the issue if it can't decide the question that's relevant? Well, I don't think the question was relevant here, and it's clear for that reason, because making those findings in that small little universe is inappropriate. The court could use the other aspects to make a ruling on the quantum merit portion of the fee petition, which is what we asked for, but it should not have made these misconduct findings, or malpractice or misconduct, call them what you will, findings based on what was in the record, which is extremely limited. It has no context. It has no layering, no complexity. You speak generally of misconduct. In particular, what are the findings that you're most concerned about from the district court? The court seemed to make four findings, or at least it mentions them. One is the so-called holding of a filed hostage, which is not reflected in the record. She simply took the other side's argument and essentially lawyer rhetoric and cited it in her decision. That was a mistake on a file, which was asked for in late July 2014 and tendered in August 2014. The other side makes it look like the file was held hostage for months. That's not what happened. That's not what's in the record. The second holding is a suggestion of a missing authorization that led to reduced value for this plaintiff, who, by the way, received $5.5 million in her trial verdict. That is not supported by the record. In fact, there is a single email that supposedly supports that in the record, where the lawyer in question said he sent that authorization that's complained of, the missing authorization. The third finding is, forgive me, I can't even remember, it's so minor, but those are the two primary ones I would say that occurred to me when asked that question. Did you request some kind of an evidentiary hearing in front of the district court, or was this on a stipulated record? It wasn't stipulated. The court put out an ECF notification that this was a summary proceeding, Your Honor. This was a summary judgment motion for disputed attorney's fees. That's what it was. Our opposition was for quantum error fees. We were asked to leave the case by the client. We did, and we put an attorney lien under 481.13. After everything had settled with the appeal and the judgments, we came looking for a fee. We put a quantum error submission in for $112,000. By the way, on an attorney's fees pool, that exceeds $1.2 million.  That's how we got to this point. We did not ask for a hearing on it. The court ordered that this decision would be made on the papers. The other side tried to make that into some sort of waiver on our part. That was not what occurred. Even if we did ask for a hearing on this, it still would have not been appropriate to make these findings, because this is still a summary proceeding. It's a one-day hearing. It's not several depositions of all the involved parties, discovery, et cetera, that would typically go into this type of case. It would have been simply a summary proceeding one day, and the court would have made a determination. Even if we had, it would not have changed this equation of these three cases that I'm saying make this type of finding inappropriate. Going to my quantum merit portion of what we're looking for, we believe the court incorrectly applied the quantum merit doctrine here. There is no dispute that services were rendered by Napoli, Burn, Ripke, Shkolnick, NBRS, as I call it. There appear to be no circumstances that would suggest that no promise to pay is implied. This was a contingency fee retainer that, after the clients asked us to withdraw from representation, we did. I think the promise is there. The only real question here is the value. The way you determine value of reasonable value of attorney's fees in Minnesota is a six-factor equation, and now it's eight from a case called Pharisee Law Firm v. API, Inc. Asbestos Trust. Those six factors are as follows. The time and labor required for the case, the nature and difficulty of the responsibility assumed, the amount involved, and the results obtained. That is an interesting factor because that is considered the most important factor in the Eighth Circuit. In that case, it's Jenkins v. State of Missouri, 127F.3D709, Eighth Circuit, 1997. The fees customarily charged by an attorney doing this kind of work, the expense, reputation, and ability of counsel, and finally, any sort of fee arrangement that might exist between the client and the attorney. Number six was not the case here. The court really made no assessment of these factors at all for Napoli, Burn, Ripke, Shkolnick. She simply took what the other side's rhetoric and made a determination that we were not entitled to fees as sort of a net balancing of the Napoli, Burn, Ripke, Shkolnick's representation versus the so-called misconduct findings. I thought, as for the results obtained, the way I read the district court's opinion was that Napoli had no effect on that. If anything, it was a negative effect. Yeah, that's exactly what I was getting into, Your Honor. That is how the district court ruled. I think that's incorrect. For example, there's a deposition out there of a gentleman named Stephen McClain. He was Toyota's polymer expert. I guarantee most people in this room don't even know what a polymer is. It's a synthetic long-chain molecule that is used in these types of vehicles. And this was a 1996 Camry with a mechanical throttle. So that was Toyota's key expert. I took his deposition personally, and it went on for about six hours. And I like to think I did a pretty effective job. Complete silence on that matter from both the other side and the court. That is a specific piece of work that definitely added value to this representation. Not assessed by the court, the district court. Not assessed by the other side. The success on the merits, also not assessed by the district court. This was a verdict that was excellent, to be frank. It was a very successful case for all the plaintiffs involved. And if you don't know the facts, just briefly, it was a gentleman driving his Toyota's Camry into the vehicle that, of the plaintiffs that I represented, Ms. Trice and Mr. Adams. Well, Ms. Trice's daughter was in there at the time. Killing several people in that car, injuring several others significantly. And so, given those facts, this is, remember, another gentleman, his car suddenly accelerated and drove into this vehicle. It was a very difficult case. So the success on the merits was never assessed and really should have been. Because it's the most important factor and it's understandable. Given the amount of attorney's fees here, what we're asking for wasn't that considerable. And if the court felt that our request was too high, its appropriate remedy would have been to reduce the fees, not completely deny them. You know, the court went into certain, the district court went into certain portions of what it, the quantum merits submission that it felt were too excessive. For example, it honed in on a Pro Hoc Veche filing. So there's this associate, that's me, that she talks about. That particular entry involves ECF uploading of that Pro Hoc Veche motion as well as review. I upload everything myself, ECF. I don't give it to a paralegal or assign it to a lower level attorney. And sometimes when you're uploading things to ECF, it can take a long time. Just this morning I had uploaded something to the New York State ECF and somehow it double filed. Now I've made myself an extra hour and a half of work just because the system messed up. So that, if the court felt that entry was excessive, it's appropriate. Because there's no denying that the work occurred, right? No one disputes that the work actually happened. What about the findings? She also said that the Napoli firm didn't provide any evidence to show what the hourly rates were, that they were consistent with the type of legal services provided, what was the experience, reputation, and ability of the lawyers. What about those missing pieces? Well, that's a non-pledgable aspect of the argument. The district court could have asked us to supplement the submission. By the way, the requirement there was to make a three-page supplemental letter submitted to the court so we didn't know if a significant lengthy affidavit would have been agreeable. And there was already a motion to strike when we put that submission in. But nonetheless, that's a question that could have been remedied if the court had a mind, and appropriately so, to deduct the fees, reduce them, as so many cases have done, instead of completely eliminating them. J.W. versus St. Paul Public Schools, that's a situation where the court said, well, I don't know if there's enough evidence here to substantiate what you're saying. You're quantum narrow it. However, I'm going to reduce it because there's no disputing the work occurred. And that's the same situation in the court below. But those factors are specifically the ones you started with, the Paulson factors. And so now you've shifted to sort of, oh, well, if I don't meet the Paulson factors, then reduce it. But I understood your argument originally that the court had to address those factors, and those are some of them. And it seemed that that was your burden to come forward with on a quantum narrow it request. Well, again, if the court wanted those elements, it could have asked us for a supplement. It did not because, again, it was a limited submission, a three-page submission, and we didn't want to overburden the court. It had already had a significant amount of pages to deal with. But if it really should have been reduced instead of completely eliminated, that's not a reason to completely eliminate it. It's not that work occurred. That's simply something that the court would look to. And the court could have reduced the hourly rate of some of the attorneys that were there, although we stand by those rates. Those are the rates for an East Coast attorney who is a national-level trial attorney, and that's part of the reason I think the court was pointing to how the hourly rate, the number that was alleged in the hourly rate. Finally, I just wanted to point out that this is not a fee forfeiture case. The court below did not assess the fee forfeiture precedent out there. I'm wondering about that. Was that raised at all? It was raised by the opposing counsel, but the court below. In the district court? No. She could have. It was all over their papers, but she did not make any assessments there. No, no. I was asking whether opposing counsel raised it. Oh, yes. They raised it both below and in their brief here. She only relied on quantum merit. She didn't rely on the forfeiture rationale. Right, because those elements are not met. The bad faith is not there, and fraud isn't even argued. That's what you need for a fee forfeiture in Minnesota, and that's not here. If the court has no further questions, I'd like to reserve my remaining time for rebuttal. Thank you. You may. You may. Mr. Magnuson, we'll hear from you. Good morning. May it please the Court. For the record, Eric Magnuson, on behalf of Bridget Trice and Quincy Adams, you can look through the docket in this case and try to find a lien motion. My counsel says this is a lien foreclosure action. It's a summary proceeding. They never made that motion. We made a motion to have the court resolve the attorney's fees issue. We made that motion, and we're fully expecting an evidentiary hearing. We submitted an expert affidavit. We were prepared to go to a hearing. We have a former Minnesota Supreme Court justice and experienced litigator, Sam Hansen, who outlined the misconduct, outlined the failures, and outlined the damage to the client. This was not a summary lien proceeding. You will never find that motion in the docket. What it was was their request to be paid the value of their services, quantum merit. Under Minnesota law, my clients had the absolute right, even if they didn't have a reason, to discharge the Napoli firm. They had plenty of reason. Counsel says that the misconduct was minor. Well, they failed to meet the expert disclosure deadline, and so the economist that my clients had hired and paid for couldn't testify because of their failure. They failed to disclose half a million dollars in medical expenses that were undeniably recoverable in the litigation, but when they got to trial, Judge Montgomery said, I'm sorry, they weren't disclosed in discovery. I'm not going to let you claim them. Half a million dollars in Minnesota has 10% prejudgment interest. It's a $750,000 claim. They made a settlement demand after they didn't disclose the expert and didn't provide the discovery on the medical. They made a settlement demand without client authority, we think in an effort to cover up their wrongdoing. That caused Toyota to say, you guys are completely off the target here. We're not going to negotiate with you at all. My clients fired them and fired them for good reason. Now, when that happens in Minnesota, they are entitled to a quantum Merowit fee, but quantum Merowit measures how much did they add to the case. Mr. Farnolo talks about the deposition of the polymer expert. He was one of dozens and dozens of experts. This was a long, hard-fought trial. There was no tying of that deposition to the ultimate success in this case. The ultimate success in this case came from the results of all of the lawyers who stayed on the case, including my client's new lawyers, who had to get up to speed, couldn't get the file from the Napoli firm, had to insist on it and point out another ethical violation by their retention of it. What was the evidence on the file? He says it was just rhetoric from opposing counsel. Was there actually an affidavit or a testimony? Yes, there was an affidavit from William Markovits, and he was prepared to testify. Who's Markovits? He's the lead trial lawyer for Trice and Adams at trial. He's from the Markovits stock and DeMarco firm. And his affidavit is in the record. About the file? About the file, when they asked for it, how they repeatedly asked for it, how they were told, we're not going to give it to you until you pay the costs that we've incurred, which is a direct violation of Minnesota rules of professional conduct. This was not isolated or minor misconduct. It was significant. And in the context of a quantum Merowit claim, the trial judge not only could look at all of that, she had to look at all of that because she had to decide what's the value of the services that the Napoli firm provided. Now, Napoli has an affirmative obligation to establish its entitlement to compensation under Minnesota law. In a quantum Merowit proceeding, the contingent fee contract is out, and it's how did you contribute to the case compared to the other lawyers. Judge Montgomery was intimately familiar with the case. She knew what everybody did. And she said, you know, you didn't contribute very much, if at all. But what you did do was a net negative. Now, she didn't use the word forfeiture, Judge Collett, and she talked about our forfeiture claim. And Minnesota law is absolutely clear. When a lawyer breaches the fiduciary obligations owed to the client, they forfeit any fee. The district court didn't adopt that approach. She didn't articulate it. What she said was there's a net negative, so I'm not going to give you anything. Wasn't that a quantum Merowit analysis? It was. Those are two different things. I think they are, but I think that they're two sides of the same coin. But I agree she did not say you forfeit your fee. We think that she could have said that. She didn't need to say that. I think you can affirm on that alternative ground because it was clearly presented below, and it is a question of law based on these facts. What about the argument that there's authority supposedly saying that this sort of summary proceeding is not an appropriate forum for findings about breaches of duty and so forth? That was the point that I was trying to make when I got up. Those are attorney's lien cases under Minnesota law. There's a statute, and it says the district court may summarily decide the amount of the lien, which is simply creating a security interest in the recovery. That's what the summary proceeding is. But as I said, they never asked for a 481.13 hearing. You won't find it in the pleadings. I see. That's what you meant. That's what I meant. And besides that, if you read the Thomas Foster case that they rely on, it says the court may decide it summarily if it chose to. Judge Montgomery didn't choose to decide this summarily. She said, okay, you guys can have a hearing. We had told the magistrate judge maybe we could do this on the record. She said, you can have a hearing unless everybody agrees you're going to do it on what you've submitted. They weren't deprived of a hearing. They waived it. They said no. Everybody affirmatively waived the hearing? Absolutely. Did they enter or offer up any evidence to counter the affidavits that you've described? They had Mr. Farnolo's affidavit that pretty much repeats what his argument is today. They didn't have an expert witness. They didn't come in with any evidence as to the standard hourly rates that they charged, any detailed time billing records. They came in after the fact when he said this was a limited three-page submission. Well, they submitted an affidavit and billing records attached to the three pages, which we thought was inappropriate. But that was all after the fact. There was no question they could have had a hearing. We could have had a hearing, and all the parties agreed that this judge was familiar with the case. She didn't need to hear a lot of testimony. We had an expert affidavit from a former Minnesota Supreme Court justice outlining their shortcomings, their failures, the harm to their client. We were fine relying on that. They could have had a hearing if they wanted. So there was nothing added? There's one instance that he's saying was factually disputed, and that's the handing over of the file. Was there anything offered to counter the affidavit that you had presented on behalf of your clients on that issue? It's the same argument that you hear today. There was an e-mail. They were discharged, I forget the exact month. The new firm was hired right away. The affidavit from Bill Markovitz says, we tried to get the file right away. Then a couple months later there's an e-mail from one of the other plaintiff's lawyers, Michael Padden, to these guys saying, you've got to give us the file. But it wasn't that we waited several weeks or months. We knew the trial was coming up. So that is disputed, and you can compare Mr. Markovitz's affidavit with Mr. Farnolo's affidavit, and you'll see that the court had plenty of record to say that they inappropriately withheld the file. What about this Farisi decision that came out after the district court's order? Did that show that the law is different than what she applied? It's not, Your Honor. Farisi is an interesting case. John Farisi had been representing API against insurance companies for close to 20 years. He got a settlement of part of a claim. I'm talking more about the standard they applied. Right, but I want to explain the context of what they were trying to address. Farisi claimed the only thing he had to show to justify his fee was his He said, I don't have to show the other six things. And that was the occasion for the Supreme Court to come in and say, okay, we're going to lay out all the factors you have to show for quantum merit. The first six things have always been in the law, and it's the factors that, as you pointed out, he started talking about. Who did what? How much did they charge for it? How did it contribute to the case? The court also said, we're going to look at the contingent fee contract as a factor. That's not a factor in this case. And we're going to look at the contributions of others, which the judge actually looked at here. I think that's implicit in all the, if you go back to the El Triptofan case from the Minnesota Court of Appeals, you look at how much did the fired lawyer add to the case and how much did the successor lawyer add to the case when you're deciding how to divvy up that contingent fee. And so I think that although Judge Montgomery didn't have the benefit of Farisi, it wouldn't have changed her analysis at all. The points that it added aren't material to her decision. What she basically said was, you didn't give me very much evidence that you did anything helpful. The evidence that you did give me was pretty weak and deficient in a lot of ways. But what you also didn't show is that you didn't refute the you harmed the client evidence. There is overwhelming evidence that they caused $750,000 worth of damages to Bridget Trice's case alone. Under those circumstances, their representation wasn't worth anything. It was a net negative. And based on that, she was well within her broad discretion in setting a quantum merit fee at zero. And her findings of fact are fully supported by the record. I hate to leave time on the clock, but I think I made my points. We don't mind. Thank you very much. Thank you for your argument. Mr. Farnoa, we'll hear from you in rebuttal. Thank you, Your Honor. I have to go quickly. I don't have a lot of time. That we agreed to a summary proceeding, false. The district court sent out a DCF notification that this would be done on the papers. There was no affirmative agreement to that. That is incorrect. This was a lien proceeding under 481.13. There is nothing in the record that supports that. It was a summary judgment motion to resolve the remaining attorney's fees. We had asserted our lien well in advance in 2014 via a series of letters. I invite the court to look in the record. They're all in there. So this was a proceeding under our lien, 481.13, whether they like it or not. Even if we had asked for a hearing, this is still a summary proceeding where these types of misconduct findings would have been inappropriate. The case law is clear. Sam Hansen's name came up. He is their paid expert here. He was their expert, and he said it several times. He is here to find reasons to put misconduct against us, not as an objective individual. Bill Markovitz, the new trial counsel, did not try this case. It was Bob Hilliard who did the liability portion of this trial. That goes to the Pharisee, the contribution of other factors. That's critical here. There were several attorneys on this. Forrest Hopper, Bob Patterson, Kathy Snapguy can name a litany of attorneys that worked on the plaintiff's side liability issues here because that's the reality of these consolidated litigations with several plaintiffs. There are numerous attorneys who have the same goal, which was establishing liability against Toyota. So that Pharisee factor, the contribution of others, would have been critical. The $500,000 supposed number, there is one email in the record about that, and the email says I sent that authorization. So that is hotly in dispute and not supported by the record. And the settled demand accusation still needs context. I'm out of time. Thank you. Very well. Thank you for your argument.